UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SEAN ALLEN HAMRICK,

Plaintiff,

v.                                    Case No. 8:20-CV-2606-TPB-TGW

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,
            Defendant.

_____

REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of

his claims for Social Security disability benefits and supplemental security

income payments.  Because the decision of the Commissioner of Social

Security is supported by substantial evidence and does not contain reversible

error, I recommend that the decision be affirmed.

I.

The plaintiff, who was thirty years old at the time of the

administrative decision and who has a special education high school

diploma, has worked as a landscaper and traveling carnival worker (Tr. 43-

44, 48).  He filed claims for Social Security disability benefits and

supplemental security income payments, alleging that he became disabled

on September 1, 1994, due to a learning disability, ADHD, high blood pressure, kidney problems, and anxiety (Tr. 66-67).   The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge.   The law judge found that the plaintiff had severe impairments of "adjustment disorder with depressed mood; specific learning disorder with impairment in reading, written expression and mathematics; and anxiety" (Tr. 18).   She concluded that, with his impairments, the plaintiff can perform work at all exertional levels with the following nonexertional limitations (Tr. 21):

> [T]he claimant is limited to performing simple repetitive jobs defined as those having no more than 1 to 2 tasks as defined by the US Department of Labor and Employment and Training Administration in the revised handbook for analyzing jobs and they would need to be low stress jobs defined as those having no more than occasional decision-making required and no more than occasional changes in the work setting and they cannot require reading beyond the 4th grade level; math beyond the 3rd grade level; and he may have no more than occasional interaction with the public, coworkers or supervisors.

The law judge concluded that the plaintiff is unable to perform any past relevant work (Tr. 30). However, the law judge determined, based upon the testimony of a vocational expert, that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform, such as industrial cleaner, dishwasher, and hand packager (Tr. 31). The law judge therefore ruled that the plaintiff was not disabled (Tr. 32). The Appeals Council let the decision of the law judge stand as the final decision of the defendant.

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment, under the terms of the Social Security Act, is one that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

-3-

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.   42 U.S.C. 405(g).   Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).   Under the substantial evidence test, findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings.   Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.   Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).   Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.   Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.    However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff argues that the law judge failed to properly assess the medical opinions of three examining psychologists (Doc. 19).    The plaintiff's challenges are unmeritorious.

This case was decided under new regulations governing the assessment of medical opinion evidence.    20 C.F.R. 404.1520c.    Those regulations change established principles in the Eleventh Circuit concerning the evaluation of medical opinions. The regulations now state (20 C.F.R. 404.1520c(a)):

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions(s) or prior administrative medical finding(s), including those from your medical sources.

Rather, medical opinions and prior administrative medical findings are to be considered for their persuasiveness based upon the following factors:

(1)     Supportability.
(2)     Consistency.
(3)     Relationship with the claimant [including]
(i)      Length of the treatment relationship.
(ii)     Frequency of examinations.
(iii)    Purpose of the treatment relationship.
(iv)    Extent of the treatment relationship.
(v)     Examining relationship.
(4)     Specialization.
(5)     Other factors.

20 C.F.R. 404.1520c(c)(1) – (5).

Supportability and consistency are the two most important factors.    20 C.F.R. 404.1520c(a); 20 C.F.R. 404.1520c(b)(2).    Indeed, law judges are not even required to explain how they considered factors 3 through 5, 20 C.F.R. 404.1520c(b)(2), unless the record contains differing, but equally persuasive, medical opinions or prior administrative medical findings about the same issue.    20 C.F.R. 404.1520c(b)(3).

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior

administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."   20 C.F.R. 404.1520c(c)(1).

"Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."   20 C.F.R. 404.1520c(c)(2).

The new regulations also provide that where the record contains multiple medical opinions from a single medical source, the law judges are not required to articulate how they considered each medical opinion, but it is sufficient if there is a single analysis of the factors.   20 C.F.R. 404.1520c(b)(1).

1. <u>Dr. Peter MacKenzie</u>.

The plaintiff argues that the law judge erred in discounting the opinions of Dr. MacKenzie, a licensed psychologist who evaluated the plaintiff over two days (Doc. 19, pp. 13-17).   The psychological evaluation included an intelligence and academic achievement test, the CPT-II (an assessment of attention/concentration), the ADHD Behavior Checklist for Adults, and a Personality Assessment Inventory (<u>see</u> Tr. 281-88).   Dr.

-7-

MacKenzie opined that the plaintiff had ADHD, adjustment disorder, and learning disorders that caused essentially disabling mental functioning limitations (see Tr. 288).

The law judge acknowledged Dr. MacKenzie's opinions of extreme mental limitations, and gave a detailed explanation, based on their supportability and consistency, for finding Dr. MacKenzie's opinions unpersuasive.   Thus, the law judge initially quoted from this assessment (Tr. 26-27):

> With respect to the opinion evidence, in March 2018, Peter MacKenzie, PhD, conducted a comprehensive psychological evaluation (Exhibit 2F) …. Dr. MacKenzie's summary references the following:
> "Mr. Hamrick was diagnosed with AD/HD in kindergarten and learning disabilities in elementary school.   He was provided instruction in a special education classroom. Previous evaluations have consistently identified a significant level of variability in his information processing skills, with his non-verbal reasoning abilities being much stronger than his verbal skills.   While he was in high school he completed vocational training in Building and Grounds Maintenance.   He graduated with an IEP diploma.   Mr. Hamrick has worked in a variety of capacities and reported having been let go from many positions due to an inability to "keep up" or his not

understanding what was expected of him. He
is seeking support from ACCES-VR to
identify and secure appropriate employment.
He indicated that he would like to work in
landscaping.   Current test results continued
to verify Average non-verbal, visual-spatial
reasoning abilities, adequate memory skills,
limited verbal abilities and extremely slow
information   processing.    Compromised
attention/concentration   was   confirmed,
exacerbated by his learning difficulties.
Mr. Hamrick's basic academic skills were
deficient, while his applied abilities were
slightly stronger (Low Average).   However,
his performance indicated that he cannot be
considered functionally independent for tasks
of daily living.   Lastly, Mr. Hamrick's
personality profile was reflective of an
individual who is moody and sensitive.   He
is dissatisfied with many of his close
relationships, despite a tendency for him to
be distant.   He reported a mild level of
depression with an enduring feeling of
inadequacy and personal failure.   These
emotional issues appear to further impact his
ability to concentrate." (Exhibit 2F/9).

The law judge then stated several reasons why she found Dr. MacKenzie's

opinions of extreme mental limitations unpersuasive (Tr. 27):

First, the doctor does not provide a function-by-
function assessment as to the claimant's
ability/limitations   in   vocational   terms.
Secondly, portions of the summary reflect what the
claimant reported to him and not necessarily the

doctor's opinion [] *i.e.*,: the claimant reported
having been let go from many positions due to his
inability to "keep up" or not understand what was
expected of him.   Yet, in the doctor's report, the
claimant reported he was employed with a
traveling carnival but quit this position when his
son was born (Exhibit 2F/4)—and there is no
indication that was related to his inability to "keep
up" or understand what was expected of him.
The claimant also reported to the doctor that he
worked for Al's Maintenance through supportive
employment (31/2 years) but was terminated
following an injury and inability to work for over
six months—yet the doctor does not further
inquire as to whether he was terminated due to an
injury or an inability to work for over six
months—as well as there is reference that the
claimant lost his driver's license and has an
inability to travel—and there is no reference that
perhaps the claimant['s] inability to drive to a
location is a factor related to his employment.   As
there may be multiple factors why the claimant
stopped working and the doctor does not tease out
the extent of the claimant['s] inability to work and
to what extent it may or may not be related to
mental health limitations, his assessment is not
overly compelling.   In addition, the claimant
cares for his young children—at the time of the
exam, the claimant reported to the doctor he has a
son age 4 and a daughter, age 3, and there is no
indication as to whether that may be a factor
affecting his ability to work.   The claimant also
reported a mild level of depression with an
enduring feeling of inadequacy and personal
failure and the doctor stated these emotional issues
appear to further impact his ability to concentrate
(Exhibit 2F/9).   Yet the doctor saw the claimant

over a period of two days, he perform[ed] testing, and his opinion overall does not reference a significant lack of an ability to concentrate, other than the claimant self-report. Notably, the claimant was able to complete the Weschler Adult Intellectual Scale-Fourth edition.[1]  In addition, with respect to the claimant's ability to allegedly [] "keep up" and or "understand" the claimant reported to the doctor that he enjoys playing sports (basketball football), fishing, video games and cards, and there is no indication the doctor asked him if he had any difficulty keeping up with things he enjoys. Thirdly, the doctor stated the claimant's performance indicates he cannot be considered functionally independent for tasks of daily living. At the time of the examination, the doctor indicated the claimant has a girlfriend with whom he has two children, a son age 4 and a daughter, age 3. Although he references they currently reside with his parents as both he and his girlfriend are unemployed, he does not ask the claimant who takes care of the children (Exhibit 2F/4). Notably, at the hearing the claimant testified that although he lives with his parents and his girlfriend at his mother's house, during the day he cares for their one-year-old baby (his third child), and that he plays with the baby as well as watches television, supporting he has an ability to perform daily tasks independently. (Hearing tape). Fourthly, with respect to the claimant's medical concerns, the doctor remarked the following:

---

1 The plaintiff contends that Dr. MacKenzie needed to read to him a section of the Weschler Adult Intelligence Scale Test (Doc. 19, p. 16). That is inaccurate; Dr. MacKenzie stated that "[t]he only accommodation provided was this examiner reading the Personality Assessment Inventory" to the plaintiff (Tr. 283).

> "contrary to his documentation, Mr. Hamrick
> stated that he took this medication through
> completion of high school and then stopped taking
> it because he did not like how it made him feel."
> (Exhibit 2F/4).   The doctor does not discuss
> whether medication would be beneficial or not
> and/or whether it would likely improve his
> medical condition.   Notably, the claimant
> testified at the hearing that medication is helpful.
> (Hearing tape).

This is a cogent and reasonable explanation for finding Dr. MacKenzie's opinion of extreme mental limitations unpersuasive.

Notably, the law judge did find that the plaintiff had substantial mental limitations, as she greatly reduced the plaintiff's residual functional capacity to simple, repetitive jobs requiring no more than third and fourth grade math and reading skills; low stress; occasional decisionmaking; and only occasional interaction with the public, coworkers or supervisors (Tr. 21).   Thus, she only rejected Dr. MacKenzie's opinion that the plaintiff was essentially disabled from working.   Furthermore, the law judge's explanation is supported by substantial evidence.   See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1158 (11th Cir.2004) ("Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").

Thus, the law judge recounted ample evidence of the plaintiff's daily functioning, including caring for young children, and his prior job as a carnival worker during the alleged disability period, that is inconsistent with Dr. MacKenzie's opinion that the plaintiff's mental functioning limitations essentially preclude him from engaging in substantial gainful employment (see Tr. 18-27). See Crow v. Commissioner, Social Security Administration, 571 Fed. Appx. 802, 806–07 (11th Cir. 2014) (It is appropriate for the law judge to consider the consistency of the treating physician's opinion with the plaintiff's daily activities.); see, e.g., Wind v. Barnhart, 133 Fed. Appx. 684, 692 (11th Cir. 2005); see also Walker v. Social Security Administration, Commissioner, No. 21-12732, 2022 WL 1022730 at *3 (11th Cir. Apr. 5, 2022)(It is appropriate to consider daily activities at step four of the sequential evaluation process).

In this regard, the law judge elaborated (Tr. 29):

> .... The claimant testified at the hearing that he takes care of his one-year old child as well as h[is] other children, which requires an ability to sustain an ordinary routine.   It is reasonable to find that the claimant would have to feed the baby throughout the day, change the baby's diapers/bathe and clean the baby, and maintain some type of routine as well as it will require constant attendance on a regular basis to maintain

the health and well-being of the child—as well as
take care of his other children.

Indeed, the plaintiff confirmed to his psychiatrist that he "takes care of [the] baby, changes diaper[s], [and] makes f[oo]d" (Tr. 362). Additionally, the plaintiff takes care of the dog, cleans the house, does some laundry and shopping, and uses public transportation (Tr. 20, 26, 362). The law judge also commented that, at the time of the hearing, the plaintiff's fiancée was scheduled for surgery so that the plaintiff would be the sole caretaker of the family during that time (Tr. 24).

The law judge also mentions that the plaintiff plays sports, video games, and cards, and goes fishing and to the gym (Tr. 20), all of which she could reasonably conclude require the ability to concentrate and attend to a task, and is inconsistent with Dr. MacKenzie's opinion that the plaintiff "has to be constantly 're-shown' how to do tasks" (Tr. 23-24; 28-29).

Moreover, the law judge had a unique perspective in this case because the plaintiff was employed with a carnival during the alleged disability period. Thus, the plaintiff reported to his psychiatrist that he "set up and ran rides and ran games at the [traveling] carnival" (Tr. 29), which the law judge could reasonably find was inconsistent with Dr. MacKenzie's

-14-

opinion that the plaintiff was essentially mentally incapable of substantial gainful employment (see Tr. 24, 29).    Specifically, the law judge could fairly reason that the plaintiff's carnival work "supports [that] the claimant has the ability to concentrate and maintain a schedule in completing work tasks" (Tr. 29) that he does not need to re-learn tasks (Tr. 24), and that the plaintiff is "ab[le] to ... adapt to changes while traveling" (id.). The plaintiff, notably, was not fired from this job; rather, he stated that he left the job to take care of his children (Tr. 29).    Therefore, under these circumstances, the law judge could reasonably question whether factors unrelated to the plaintiff's mental health were contributing to his alleged inability to work (see Tr. 26).

Finally, the law judge recounted that the plaintiff's long-term, mental status evaluations were essentially normal, including opinions that his concentration was good, and he had normal cognition and memory (see Tr. 23; see, e.g., Tr. 326 (neurologist stating that the plaintiff was "able to provide a good historical account of recent and remote events with a normal attention span and attention to details")).    See Matos v. Commissioner of Social Security, No. 21-11764, 2022 WL 97144 at *4 (11th Cir. Jan. 10, 2022) (Normal MSE findings support the law judge's determination that the

-15-

claimant was not disabled.); <u>Tredik</u> v. <u>Commissioner of Social Security</u> <u>Administration</u>, 826 Fed. Appx. 840, 850 (11th Cir. 2020) (The ALJ may rely on "relatively innocent mental status examinations" in determining disability.).

In sum, the law judge stated an ample and reasonable explanation for discounting Dr. MacKenzie's opinion that the plaintiff is essentially mentally disabled from working, and that reasoning is supported by substantial evidence.   See <u>Lewis</u> v. <u>Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997) (substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion).

The plaintiff challenges the law judge's decision to discount Dr. MacKenzie's assessment on several grounds, none of which are meritorious. Initially, he appears to challenge the law judge's criticism that Dr. MacKenzie's summary did not include a function-by-function assessment of the plaintiff's capabilities.   However, this is accurate, and it is a reasonable consideration.   See <u>Clough</u> v. <u>Commissioner of Social Security</u>, 813 Fed. Appx. 436, 441 (11th Cir. 2020) (The ALJ may discount the weight afforded to a doctor's assessment because the opinions were "vague, and [did] not

provide any function-by-function assessment of the claimant's ability to perform work-related mental activity.").

The plaintiff also argues that the law judge "ignores" several of Dr. MacKenzie's opinions (Doc. 19, p. 14). This contention is meritless. Under the new regulations, a law judge is not required to articulate how she considered each medical opinion within an assessment; rather, it is sufficient if there is a single analysis of the factors.    20 C.F.R. 404.1520c(b)(1). Furthermore, contrary to the plaintiff's contention, the law judge did not ignore Dr. MacKenzie's opinions that the plaintiff could not perform independently tasks associated with daily living, or that he lacked adequate cognition to learn and perform tasks in a timely manner (see Tr. 26-28). Moreover, Dr. MacKenzie's suggestions for a job coach and supportive employment are opinions on issues that are reserved to the Commissioner which the law judge is not required to analyze. See 20 C.F.R. 404.1520b(c)(3)(i); 416.920b(c)(3)(i).

The plaintiff next challenges the law judge's statement that portions of the summary reflect what the claimant reported to Dr. MacKenzie, arguing that "the actual limitations came from objective findings, including the multiple tests performed by [him]" (Doc. 19, p. 15).

-17-

This argument fails because the law judge may consider that portions of Dr. MacKenzie's assessment are undermined by reliance on the plaintiff's subjective reports of disabling symptoms, which the law judge found were not fully credible (Tr. 23), and that finding is unchallenged. See Majkut v. Commissioner of Social Security, 394 Fed. Appx. 660, 664 (11th Cir. 2010) (discounting the weight given to a treating physician in part because the opinion was based on the plaintiff's subjective complaints which the law judge found were not credible). For example, the law judge notes that Dr. MacKenzie appears to accept uncritically the plaintiff's representations that he is unable to "keep up" and that he did "not understand[] what was expected of him" at work, despite contrary evidence of the plaintiff's successful employment as a carnival worker and long-term employment in landscaping (see Tr. 24, 27).

Furthermore, the law judge did consider the plaintiff's test results in evaluating Dr. MacKenzie's opinions and credited some of them. Thus, the law judge accepted Dr. MacKenzie's opinion that the Conners' Continuous Performance Test II "suggest[s] he is likely to have difficulty in adapting to changes in task demands" by limiting the plaintiff to jobs with only one or two tasks and only occasional decisionmaking (Tr. 21, 285).

The law judge also took into account Dr. MacKenzie's opinion that the plaintiff's attention appeared to wane as the tests became more difficult by limiting the plaintiff to simple, repetitive tasks (Tr. 21).   Additionally, the law judge incorporated into the RFC the plaintiff's results on the Woodcock-Johnson Test of Achievement—4TH Ed. (WJ-IV) (Tr. 286), which showed that the plaintiff had a reading grade equivalent of 4.9 and mathematics grade equivalent of 3.4 (see id.) (the plaintiff's RFC limits him to jobs that "[do] not require reading beyond the 4th grade level; [and] math beyond the 3rd grade level").

The plaintiff, moreover, does not establish that other test results compelled a more restrictive RFC.   See Adefemi v. Ashcroft, supra, 386 F.3d at 1027 (Under the substantial evidence test, findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings.).

The plaintiff also argues that his "performance of 'minimal daily activities' is not enough to rule out disability" (Doc. 19, p. 16).   This contention is frivolous. The law judge does not rely solely on the plaintiff's activities of daily living in finding the plaintiff not disabled (see Tr. 27-28).

-19-

Furthermore, the law judge reasonably found that the plaintiff's daily activities were substantial and reflect greater functioning than opined by Dr. MacKenzie (see Tr. 18-27).    There is, in particular, nothing "minimal" about caring for an infant and young children.

Finally, the plaintiff argues that the law judge "misrepresent[ed] the evidence" when he stated that medication helped the plaintiff (Doc. 19, p. 17).    In this regard, the law judge stated (Tr. 28):

> .... [W]ith respect to the claimant's medical concerns, the doctor remarked the following: "contrary to his documentation, [the plaintiff] stated that he took this medication through completion of high school and then stopped taking it because he did not like how it made him feel." (Exhibit 2F/4).    The doctor does not discuss whether medication would be beneficial or not and/or whether it would likely improve his medical condition.    Notably, the claimant testified at the hearing that medication is helpful. (Hearing tape).

The plaintiff argues that this is a misrepresentation of the evidence because he "testified that ... it was his anxiety medication" that helped him—not ADHD medicine—and that the plaintiff reported to his doctor in 2018 that Ritalin had been ineffective for his ADHD in the past (Doc. 19, p. 17).

The plaintiff is correct that the plaintiff testified at the hearing that medication helped his anxiety.   However, the law judge's comment that Dr. MacKenzie did not address the possible effectiveness of medication is also accurate. Notably, Dr. MacKenzie himself stated that "[c]onsideration should be given to a trial of stimulant therapy" (Tr. 288), and the plaintiff suggested to Dr. Christine Ransom that ADHD medication helped him (see Tr. 418 (The plaintiff "was treated with medication when he was in school. He stopped taking medication years ago and now it is difficult for him to focus and stay on task.")).   Thus, the law judge could reasonably think that an opinion on this issue would be helpful in determining whether the plaintiff's symptoms are amenable to improvement with medication.

In sum, the law judge clearly identified substantial evidence supporting her evaluation of Dr. MacKenzie's psychological assessment, and the plaintiff's identification of some evidence supporting his position did not compel the law judge to accept Dr. MacKenzie's opinions of extreme mental functional limitations.   See Adefemi v. Ashcroft, supra, 386 F.3d at 1027; see also Lawton v. Commissioner of Social Security, 431 Fed. Appx. 830, 833 (11th Cir. 2011) (While the record does contain some evidence that

is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence.).

Thus, the plaintiff's disagreement with the law judge essentially is a difference of opinion as to the weight to be given to certain circumstances.   The law judge, however, is given the responsibility to assess those circumstances so that the plaintiff's different opinion must yield. Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986) (The weighing of evidence is a function of the factfinder, not of the district court.).

### 2.   Agnes Jonas, Psy.D.

The plaintiff also argues that the law judge "did not properly assess consistency and supportability" of Dr. Jonas's opinion (Doc. 19, p. 17).   This contention is also meritless, as the law judge discussed Dr. Jonas's assessment and gave a reasonable explanation for finding her opinion, in part, unpersuasive (Tr. 28-29):

> On August 20, 2018 Agnes R. Jonas, Psy. D., conducted a psychiatric consultative examin[ation] at the request of the Disability Determination services (Exhibit 6F).   The doctor's medical source statement references the following:   "No evidence of limitation understanding, remembering and applying simple directions and instructions.   There is moderate to marked limitation understanding, remembering,

-22-

and applying complex directions and instructions.
There is no evidence of limitation using reason and
judgment to make work-related decisions.    There
is moderate limitation interacting adequately with
supervisors, coworkers, and the public.    There is
marked limitation sustaining concentration and
performing a task at a consistent pace.[2]    There is
moderate limitation sustaining an ordinary routine
and regular attendance at work.        There is
moderate    limitation    regulating    emotions,
controlling behavior, and maintaining well being.
There is no evidence of limitation maintaining
personal hygiene and appropriate attire or being
aware of normal hazards and taking appropriate
precautions.    Difficulties appear to be caused by
cognitive deficits and emotional dysregulation."
The undersigned accepts the doctor's opinion the
claimant can remember, understand and apply
simple    directions    and    instructions.        The
undersigned accepts the doctor's opinion that the
claimant has no limitation using reason and
judgment to make work-related decisions.    In the
determined    residual    functional    capacity
assessment, the undersigned has limited the
claimant    to    occasional    interaction    with
coworker[s,] supervisors and the public, which
appears consistent with the doctor's assessment of
moderate    limitations    in    this    regard.        The
undersigned does not accept the claimant has
marked limitation sustaining concentration and
performing a task at a consistent pace.    Although
the doctor conducted testing such as serial 7s and

_____

2 A marked limitation means that the person's "functioning in this area independently,
appropriately, effectively on a sustained basis is seriously limited." 20 C.F.R. Pt. 404,
Subpt. P, 12.00F(d).    Thus, this is an extreme deficit.

serial 3's and although her testing supports some
limitations, the undersigned finds this is not at a
marked level.   The claimant also reported to the
consultative examiner that he plays video games,
uses a cell phone, texts sometimes—although it is
hard for him and he plays games on his phone
(Exhibit 6F/4-5) which is not supportive of marked
functional limitations.    Moreover, the doctor
does not explain why she found the claimant has
marked limitation sustaining concentrating and
performing a task at a consistent pace.   The
ability to play video games requires concentration
and the ability to be responsive to navigate through
the complexities of each level of the game in order
to achieve a specific goal to win the game, and
again marked limitations is not supported by the
evidence as a whole and again she does not explain
her assessment in this regard.   The undersigned
does not accept the claimant has moderate
limitation sustaining an ordinary routine and
regular attendance at work.   Treatment notes
reference in the past the claimant set up and ran
rides and ran games at the carnival. He misses it,
and if he did not have children, he would still be
there, which supports the claimant has the ability
to concentrate and maintain a schedule in
completing work tasks (Exhibit 16F).   The
claimant testified at the hearing that he takes care
of his one-year-old child as well as h[is] other
children, which requires an ability to sustain an
ordinary routine.   It is reasonable to find that the
claimant would have to feed the baby throughout
the day, change the baby's diapers/bathe and clean
the baby, and maintain some type of routine as
well as it will require constant attendance on a
regular basis to maintain the health and well-being
of the child—as well as take care of his other

-24-

children.   Similarly, the doctor does not indicate
why she found moderate limitations in this regard.
Therefore, overall, the undersigned is partially
persuaded by the doctor's assessment.

Thus, the law judge gave an ample explanation for partially
rejecting Dr. Jonas's opinion, contrary to the plaintiff's assertion that the law
judge "simply decided to throw out the evidence that supported Dr. Jonas's
opinion" (Doc. 19, p. 18).

The plaintiff's primary contention is that the law judge erred in
evaluating Dr. Jonas's opinion because there was objective evidence
supporting her opinions (id., pp. 17-18).   This contention is unavailing
because there is also objective evidence supporting the law judge's
determination of the plaintiff's RFC, such as the essentially normal MSE
results from his treating doctors (see Tr. 23).

Furthermore, the law judge also reasonably considered that the
plaintiff's achievement of an IEP diploma, Dr. MacKenzie's clinical
observation that did not reference a significant lack of ability to concentrate,
and the plaintiff's ability to complete two-days of psychological testing (Tr.
27) were inconsistent with marked limitations in sustaining concentration
and performing tasks at a consistent pace.

The law judge, moreover, could reasonably find in this circumstance that the plaintiff's functioning in society is especially probative of the plaintiff's mental functioning limitations.   See, e.g., Nichols v. Commissioner of Social Security Administration, 679 Fed. Appx. 792, 796 (11th Cir. 2017) (affirming law judge's reasoning that record evidence of the plaintiff's daily living activities and behavior indicated that the plaintiff enjoyed a greater degree of adaptive functioning than reflected in her IQ score); see also Pinion v. Commissioner of Social Security Administration, 522 Fed. Appx. 580, 583 (11th Cir. 2013) (activities such as caring for an infant for a substantial part of the day, participation in social activities, and having friends and a fiancé, were inconsistent with an opinion of marked difficulty performing tasks involving sustained concentration and persistence, social interaction and adaption).

In sum, the plaintiff is essentially asking again the court to reweigh the evidence, which it may not do. Thus, under this limited standard of review, we may not make fact-findings, re-weigh the evidence, or substitute our judgment for that of the ALJ. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir.2005); Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir.1991).   In fact, where, as here, substantial evidence supports the ALJ's

fact findings, we cannot overturn those findings even if other substantial evidence exists that is contrary to the ALJ's findings.   Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir.1991).    Therefore, this argument fails.

### 3.   Christine Ransom, PhD.

The plaintiff challenges next the law judge's finding that Dr. Ransom's opinion is partially unpersuasive.   The law judge discussed, and gave an ample explanation for discounting this assessment (Tr. 29-30):

> On February 26, 2018, Christine Ransom, PhD, completed a one-time examination for Monroe County. (Exhibit 14F/5-10).   At that point the claimant acknowledged he was not in any mental health treatment [and] had been on Ritalin as a child.   Reported having difficulty staying on task and staying focused. (Exhibit 14F/5-6).   On the form, it states [he] interacts appropriately with others and an "x" is placed in the box referencing frequent, which appears to mean the claimant frequently interacts appropriately with others. (Exhibit 14F/6).   The form also indicates [that he] never has repetitive violent actions toward self or others.   (Exhibit 14F/6).   The form also indicates loss of job or failure to complete education or training programs "on occasion." Behavior interferes with activities of daily living "on occasion."   These do not seem to indicate significant interference with work or daily activities.   On that same page, (Exhibit 14F/6), under mental status exam, General appearance was normal; speech and language normal; thought process normal; mood normal; affect normal;

orientation normal; and she assessed attention and concentration as moderately impaired. Dr. Ransom stated he could count from 1 to 10 and could do [2] out of 3 simple calculations. He was unable to do serial sevens or serial threes. She indicated recent and remote memory skills were moderately impaired because he can remember one out of 3 objects immediately, 3 digits forward [and] 2 digits backward. He could remember one out of 3 objects after 5 minutes. He had difficulty remembering information about his own past personal history. Cognitive functioning was normal; insight normal and judgment normal (Exhibit 14F/7). Under the employability determination, the undersigned does not find this portion very persuasive at all. It is not clear upon what these assessments are truly based or why these assessments are made. Additionally, they are extremely limited in that the individual is given the choice of no limitation at all or the person is unable to function 50% of the time or 75% of the time which is an extremely limited choice essentially designed to find an individual either without any limitation or completely disabled. Having said that, Dr. Ransom then indicated that the expected duration of his limitations w[as] only 6 months, which would clearly not meet the 12-month requirement (Exhibit 14F/9). Overall, the undersigned is not persuaded by the doctor's assessment as a significant portion of the form is completed by placing an "x" to answer the question and there is not a succinct rationale or basis for the conclusions reached by the doctor.

The law judge's explanation for discounting this opinion is adequate and supported by substantial evidence. See Lewis v. Callahan, supra, 125 F.3d at 1440. Notably, the conclusory check-box format of Dr. Ransom's opinions is, in itself, a recognized basis for discounting the assessment.   See Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 313 (11th Cir.2007); see, e.g., Brown v. Commissioner of Social Security, 442 Fed. Appx. 507, 512 (11th Cir.2011) (law judge provided good cause to reject the treating physician's opinions stated in forms that did not reference his treatment records or adequately explain his opinions).

Additionally, as the law judge points out, "moderately limited" is defined in the assessment as "[u]nable to function 50% of the time," which is essentially a choice between not disabled or disabled (Tr. 29).    Disability evaluations in the social security context are obviously more nuanced than that.    Consequently, this rating system lacks probative value.    Its inadequate imprecision is underscored by Dr. Ransom's opinion that the plaintiff is not capable of simple tasks 50% of the time (see Tr. 421), which is clearly inaccurate.

The plaintiff also fails to mention, much less refute, that Dr. Ransom's opinion of unemployability for 6 months is insufficient to satisfy

the 12-month duration requirement for a disability.   <u>See</u> 42 U.S.C. 423 (d)(1)(A).   In fact, the plaintiff does not undermine in this argument any of the law judge's reasons for partially discounting Dr. Ransom's opinion (<u>see</u> Doc. 19, p. 19).

Rather, the plaintiff's cursory argument is that "the supportability factor favored [Dr. Ransom's] opinion" (<u>id.</u>).   In this respect, he identifies deficiencies in the MSE administered by Dr. Ransom, which he contends is substantial evidence supporting this opinion (<u>id.</u>).   However, as stated in connection with the plaintiff's other arguments, the plaintiff's identification of some evidence supporting his position does not compel the law judge to accept Dr. Ransom's opinion because substantial evidence supports the law judge's determination.   <u>See</u> <u>Adefemi</u> v. <u>Ashcroft</u>, <u>supra</u>, 386 F.3d at 1027; <u>Lewis</u> v. <u>Callahan</u>, <u>supra</u>, 125 F.3d at 1440.   Therefore, this argument fails.

4.   <u>The ALJ erred evaluating opinion evidence</u>.

The plaintiff's final argument is "The ALJ erred evaluating opinion evidence" (Doc. 19, pp. 19-22).   This contention repeats much of the evidence the plaintiff presented in his previous arguments (<u>see</u> <u>id.</u>).

The crux of this argument is that "the consistency factor favors each of these [consulting examiners'] opinions" because they were consistent with each other (id., p. 19).   However, the law judge gave reasonable and ample explanations for discounting those opinions. Therefore, the purported consistency of <u>discounted</u> opinions is irrelevant.

IV.

For these reasons, the decision of the Commissioner is supported by substantial evidence.   I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: August 4, 2022

NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.